**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MICHAEL A. NYE,**

**Plaintiff,**

**-vs-** **Case No. 8:10-cv-757-T-23DNF**

**MICHAEL ASTRUE, Commissioner of Social Security,**

**Defendant.**

---

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

This matter comes before the Court on Plaintiff, Michael A. Nye's Complaint (Doc. 1), filed March 31, 2010, seeking review of the final decision of the Commissioner of the Social Security (Commissioner) denying Plaintiff's claim for Disability Insurance Benefits ("DIB) and Supplemental Security Income ("SSI").[1] In both applications, Plaintiff alleged disability beginning March 30, 2007. These claims were denied initially on August 30, 2007, and upon reconsideration on December 13, 2007. After being denied initially and upon reconsideration, Plaintiff requested a hearing, which was held on September 4, 2009 (Tr. 17-34). On October 6, 2009, Administrative Law Judge (ALJ) Dores D. Mc Donnell, Sr., issued a decision denying Plaintiff's claims (Tr. 5-16). The Appeals Council denied Plaintiff's request for review on

---

[1] Because the disability definitions for DIB and SSI benefits are identical, cases under one statute are persuasive as to the other. *Patterson v. Bowen*, 791 F.2d 1544, 1545 n.2 (11th Cir. 1986).

January 28, 2010 (Tr. 1-3). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). This case is now ripe for review.

The Court has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge, the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case. For the reasons set forth herein, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Procedural History, and Standard of Review

### A. Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404,1511.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). The Court must, "review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)(citing *Lewis v.*

*Callahan,* 125 F.3d 1436, 1439 (11th Cir.1997)).“Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.” *Id.* “Even if the evidence preponderated against the Commissioner’s findings, we must affirm if the decision reached is supported by substantial evidence.” *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)(citing *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990)). The Court must, “view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision.” *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986)). However, the Court, “may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]” *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)(citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

The ALJ must follow a five step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is doing any substantial gainful activity then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

The second step considers the medical severity of the impairment: if there is not a severe medically determinable physical or mental impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

The third step also considers the medical severity of the impairment. If the claimant has an impairment that meets or equals one of the listings and meets the duration requirement, the claimant will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

The fourth step is assessing the residual functional capacity of the claimant, and the claimant's past relevant work. If the claimant can still do his past relevant work then he will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

The fifth step considers the residual functional capacity as well as the age, education, and work experience of the claimant to see if he can make an adjustment to other work. If the claimant can make an adjustment to other work then the claimant will not be found disabled. 20 C.F.R. § 404.1520(a)(4)(v). The Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287 (1987); *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty*, 245 F.3d at 1278 n.2.

## II. Review of Facts

### A. Background Facts

The Plaintiff was born August 24, 1956, and was 53 years old at the time of the hearing decision (Tr. 21). The Plaintiff completed high school and attended college but did not receive a degree. Plaintiff's field of study was that of applied music (organist and pianist) (Tr. 22). The Plaintiff formerly worked as a restaurant server, as a CNA (certified nursing assistant) and as a cashier (Tr. 23). The Plaintiff alleges disability starting March 30, 2007, due to: chronic obstructive pulmonary disease (COPD) secondary to emphysema; hepatitis C; lumbar scoliosis with low back pain; bipolar disorder; and a history of alcohol abuse (in current remission) (Tr. 10).

**B. The ALJ's Findings**

At step one, the ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through September 30, 2008, and has not engaged in substantial gainful activity since March 30, 2007 (the alleged onset date) (Tr. 16.).

At step two, the ALJ found that the Plaintiff has the following severe impairments: chronic obstructive pulmonary disease (COPD) secondary to emphysema; hepatitis C; lumbar scoliosis with resultant low back pain; bipolar disorder; and history of alcohol abuse, in current remission (20 C.F.R. 404 1520(e) and 416.9(c)(Tr. 10).

The ALJ noted that a pulmonary function test in January 2006 showed Plaintiff had nearly normal lung function. Plaintiff has a history of mental health treatment since at least March of 2005 for alcohol abuse, depression and bipolar disorder. Plaintiff's hypertension has been treated by his primary care physician on a routine basis. Further, a hepatitis C test performed in June 2007 was unable to detect the infection. An endoscopy and a sigmoidoscopy were performed in July 2007 and August 2007, respectively. Polyps and a rectal tumor were identified and later removed.

At step three, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520 (d), 404.1525, 416.920(d), 416.925 and 416.926). (Tr. 12).

The ALJ determined that: 1) the medical evidence did not document any physical listing that met or equaled a listing; and 2) Plaintiff's mental impairment does not meet or medically equal the criteria of listing 12.04 (Tr. 13).

The ALJ considered if the mental impairment resulted in at least two of the four following criteria: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Tr. 12).

The ALJ found in activities of daily living the Plaintiff has mild restriction. (Tr. 12). Plaintiff reported activities such as watching his friend's dog, going out with friends to watch fireworks, going out to eat with friends and bowling.

The ALJ found that the Plaintiff has moderate difficulties in social functioning. (Tr. 12). Plaintiff reports an inability to handle social situations, however in a group situation and his individual therapy sessions Plaintiff identified friends and reported engaging in pleasant social situations (Tr. 12). The ALJ found that the Plaintiff had only mild difficulties with concentration, persistence and pace because although Plaintiff reported some difficulties, he also reported improvement on his medications so there is little medical evidence to substantiate his claim of more than occasional difficulties (Tr. 12). Lastly, the ALJ found that Plaintiff has not experienced episodes of decompensation which have been of extended duration. (Tr. 12).

Next, the ALJ found that the Plaintiff :

> Has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c).

(Tr. 12).

At step four, the ALJ found that the Plaintiff is capable of performing past relevant work as a restaurant server. This work does not require the performance of work-related activities precluded by the claimant's residual function capacity ("RFC") (20 C.F.R. 404.1565

and 416.965). (Tr. 25). The ALJ based the RFC determination upon the framework of grid rule 203.14 (Tr. 15). Based on these findings, the ALJ determined that the Plaintiff was not disabled. (Tr. 22).

**C. Plaintiff's Medical History**

Plaintiff was evaluated by Randolph Hemsath, M.D., a psychiatrist at Boley Centers for Behavioral Health Care, Inc., (psychosocial rehabilitations services), on April 6, 2005 (Tr. 232-234). Plaintiff was already attending the program at Boley at the time of this evaluation (Tr. 232]. Plaintiff has been diagnosed with moderate depression and minimal anxiety as well as a mild tremor. Plaintiff was diagnosed with Bipolar disorder, probably type I, and history of alcohol dependence in one month remission, and assessed a Global Assessment of Functioning (GAF) score of 50(Tr. 233). Plaintiff had an incident of suspected alcohol use in January, 2006, but none since that time (Tr. 222-230).

Plaintiff needed a very structured environment and has required extensive counseling and support for his bipolar disorder and for avoiding relapse of alcohol abuse. Plaintiff's records consist of extensive counseling and therapy notes, both group and individual (Tr. 222-223, 332-441).

On June 8, 2007, after his date of onset, Dr. Hemsath noted Plaintiff was walking during his free time and engaging in volunteer work (Tr. 222). Plaintiff's mental examination revealed he was alert and his mood was generally good (Tr. 222). Dr. Hemsath noted there was no sign of significant depression, although Plaintiff reported some anxiety (Tr. 222). Plaintiff continued to complain of some anxiety and depression, but Dr. Hemsath reported Plaintiff was stable (Tr. 297, 304).

On August 17, 2007, Timothy Foster, Ph.D., LLC, and medical consultant, completed a Mental Residual Functional Capacity Assessment for the SSA. Dr. Foster's notes state the following: "Memory is evaluated and found to be within normal limits. This claimant has moderate limits in ability to concentrate from his racing thoughts and work within a schedule and maintain regular attendance. Claimant has moderate limits in the ability to complete a normal workday or work week without interruptions from psychologically based symptoms. Claimant appears to have moderate limits in the ability to relate appropriately to others. Claimant has moderate limits in the ability to adopt to changes in the workplace. Claimant is able to sustain concentrated, task oriented activity (Tr. 260). History of ETOH in reported remission and not a factor (Tr. 270, 274). 50 yr. old male alleges bipolar, emphysema, back pain and liver disease. There have been at least 2 prior applications and denials. Boley has been source of psych treatment and their notes are in file. They diagnose him with bipolar in '05. Current notes say cl's mood is up and down and he has racing thoughts with anxiety, has improved since May when they added Lithium. Notes from last month say "no significant depression" (Tr. 274).

On December 10, 2007, Nancy Dinwoodie, M.D., medical consultant, completed a psychiatric review technique form for the SSA. Dr. Dinwoodie's notes state the following: "Alleged limitations cited in this RFC are due to a MDI. However, the severity and duration of symptoms is disproportionate to the expected severity and duration of symptoms for this MDI.

We find the clmt's alleged limitations are partially credible (Tr. 281). This is a 51 Y.O. male with hx of Hep C, emphysema, COPD, hypertension and scoliosis. Exam dated 06/14/07 shows wt 216 llbs., lungs are clear, heart regular rate and rhythm, abdomen soft, non-tender, no masses, no edema. PFT done 01/17/06 HT 66", Clmt's efforts excellent, FEV1 3.4; 2.70; 2.90" (Tr. 277).

By May 2008, Plaintiff reported his moods were stable and his anxiety was not causing problems (Tr. 446). In July 2008, Plaintiff reported his medications were controlling his symptoms (Tr. 228). Again in August and September 2008, Plaintiff's moods were stable and without much anxiety (Tr. 462, 466). Although Plaintiff reported some increased depression in November and December 2008 due to the holidays, Plaintiff admitted his medications were working (Tr. 349-50). By January 2009, Plaintiff reported feeling better and more motivated (Tr. 489, 498-502). He reported some down days in February and April 2009, but admitted his down feeling was possibly from normal responses to situations and not due to mental illness (Tr. 398).

In June 2009, Plaintiff was discharged from the LEAP program and was to continue medical management and out-patient counseling (Tr. 424) (Tr. 557). At the time of his discharge, Plaintiff was stable on his medications and his recovery. He was discharged "...because he is ready to move forward and do volunteer work in the community" (Tr. 557-558). Plaintiff moved to the Grove Apartments, an assistive living facility run by Boley Centers (Tr. 21). Plaintiff continued to receive rehabilitation counseling attending an average of 4 sessions a week taking place on an average of 3 days per week. Plaintiff advised that he

continued to have problems with self confidence and self worth (Tr. 437) and days when he could not sleep at night. Plaintiff continued to need instruction in depression, anger, stress, and mania management (Tr. 422, 441).

**III. Specific Issues and Conclusions of Law**

Plaintiff raises two issues on appeal. (1) The ALJ erred in determining that the claimant has the RFC to perform medium work and by discounting the findings of Dr. Hemsath and failing to properly evaluate the credibility of his testimony, (2) Whether Plaintiff's impairments met or equaled listing 12.04 (affective disorder). Plaintiff contends the ALJ erred by failing to address the fact that Plaintiff requires counseling to maintain a certain level of functioning and that counseling takes up so much of Plaintiff's time during the week that employment would be precluded.

**A. THE ALJ DID NOT ERR IN DETERMINING PLAINTIFF HAD THE RFC TO PERFORM MEDIUM WORK AND BY DISCOUNTING DR. HEMSATH'S OPINION**

Plaintiff argues that the ALJ erred in determining that the Plaintiff had the RFC to perform medium work because the ALJ failed to consider all of the medical evidence and the opinion of Dr. Hemsath. The Commissioner argues and the record shows that the ALJ properly considered and weighed all of the evidence in making the RFC determination.

Plaintiff's contends the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not account for his participation in a program that sometimes involved multiple counseling sessions throughout the week. (Pl.'s Br. at 8-12). An RFC is "the most

[Plaintiff] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ alone determines Plaintiff's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c) (the ALJ "is responsible for assessing your residual functional capacity.").

The ALJ found Plaintiff had psychologically based symptoms which moderately affected his ability to interact appropriately with co-workers, supervisors and the general public, but remained capable of understanding, remembering, and carrying out simple and complex work instructions (Tr 13 Finding 5).

Additionally, the issue is not whether the ALJ specifically addressed the fact that Plaintiff engaged in therapy sessions, but rather whether the ALJ considered "all medical evidence that is credible, supported by clinical findings and relevant to the question at hand." *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered his medical condition as a whole." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The ALJ considered all the evidence, including his mental treatment records in assessing Plaintiff's RFC (Tr. 13-15).

In May of 2008, Plaintiff reported his moods were stable and his anxiety was not causing problems (Tr. 446). By July 2008, Plaintiff reported his medications were controlling his symptoms (Tr. 228). 20 C.F.R. §§ 404.1529(c)(3)(iv); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). In August of 2008, Plaintiff was doing very well with his addiction and overall mental health (Tr. 345, 473). In August and September of 2008, Plaintiff's moods were

stable without much anxiety (Tr. 462, 466). Plaintiff reported some increased depression in November and December 2008 due to the holidays, but admitted his medications were working (Tr. 349-50). By January 2009, Plaintiff reported feeling better and more motivated (Tr. 489, 498-502). Plaintiff reported "down days" in February and April 2009, but admitted this was probably from normal responses to situations and not due to mental illness (Tr. 398). In June 2009, Plaintiff was discharged from the LEAP program (Tr. 424). Therefore, the ALJ properly considered the evidence and performed his duty as the trier of fact of weighing and resolving any conflicts in the evidence. *Moore v. Barnhart*, 405 F.3d at 1208, 1211, 1213 (11th Cir. 2005).

Plaintiff further contends Dr. Hemsath's opinions undermine the ALJ's RFC finding. (Pl's Br. at 10-12). However, Plaintiff admits Dr. Hemsath did not directly state Plaintiff is disabled or suffered from functional limitations resulting from his impairments (Tr. 14-15, 222). Plaintiff contends Dr. Hemsath found Plaintiff was disabled because he treated Plaintiff as part of a counseling program that Plaintiff s attended several times a week. (Pl.'s Br. at 8-12). However, Dr. Hemsath's records only further support the ALJ's finding that Plaintiff is not disabled (Tr. 13-15, 222-34, 297-304). Dr. Hemsath did not "prescribe" treatment that required Plaintiff to attend group counseling sessions at least three days a week from 8:30 a.m. to 2:30 p.m. Plaintiff noted, he was "already in the program at Boley at the time of his evaluation" with Dr. Hemsath on April 6, 2005 (Tr. 233-34). (Pl.'s Br. at 2-3). Plaintiff had been receiving ongoing treatment for his bipolar disorder prior to the alleged onset date of March 30, 2007 (Tr. 233-34). The ALJ properly considered Plaintiff's testimony together with the other evidence in evaluating the credibility of his allegations and in assessing his RFC (Tr. 13-17).

Plaintiff's also tries to rely on his Global Assessment of Functioning (GAF) score from April 2005. (Pl.'s Br. at 11). However, a GAF score may have little or no bearing on the individual's work-related functioning. A GAF score is merely an opinion regarding an individual's symptoms or possible difficulty in social, occupational, or school functioning at the time of the evaluation. *Quaite v. Barnhart*, 312 F. Supp. 2d 1195, 1200 (E.D. Mo. 2004). The Commissioner has declined to endorse the GAF scale for use in the disability programs, and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." So even if the GAF score could be interpreted as establishing limitations, Dr. Hemsath's GAF score applied to his perception of Plaintiff's functioning on April 6, 2005, which was almost two years before Plaintiff's alleged onset date.

Additionally, the ALJ thoroughly evaluated the objective medical evidence to assess Plaintiff's subjective complaints of pain, and determined that Plaintiff was only partially credible (Tr. 13-15). In his decision, the ALJ articulated conflicts between Plaintiff's statements regarding his impairment's intensity, persistence and limiting effects and the evidence as whole.

The ALJ noted that although Plaintiff testified that he suffers from disabling chronic fatigue, Plaintiff reported engaging in activities that require robust energy, such as watching his friend's dog, watching fireworks with friends, going out to eat dinner with friends, and bowling (Tr. 14, 454, 458, 567). 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (ALJ can consider daily activities in evaluating subjective symptoms); *Macia v. Bowen*, 829 F.2d 1009 (11th Cir. 1987). Further, Plaintiff also reported only some relief from his medications as well as side effects from

his medications (Tr. 27-28), however, the medical records reveal Plaintiff reported his medication worked well, was key to managing his depression, and he did not suffer side effects (Tr. 416, 426).

In this case, the ALJ did not rely on the effectiveness of Plaintiff's medication to determine he was not disabled (Tr. 14-15). Instead, the ALJ referred to medical records that demonstrated the effectiveness of Plaintiff's medication to illustrate inconsistencies with Plaintiff's testimony, thereby undermining his credibility. Substantial evidence supports the ALJ's credibility determination, which is entitled to deference upon review. *Wilson v. Barnhart*, 284 F.3d at 1219, 1221 (11th Cir. 2002).

**B. THE ALJ PROPERLY DETERMINED PLAINTIFF'S IMPAIRMENTS DID NOT MEET OR EQUAL LISTING 12.04 (AFFECTIVE DISORDER)**

The ALJ properly determined that Plaintiff did not meet or equal Listing 1, 12.04 for affective disorders under 20 C.F.R. pt. 404, subpt. P, app.1, § 12.04 and Plaintiff failed to meet his burden of proving he meets or equals that Listing 12.04. (Pl.'s Br. at 12-13).

The Listing of Impairments describes conditions which are so severe as to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a).

Under Listing § 12.04, a plaintiff must satisfy the criteria for both Paragraphs A and B, or Paragraph C. Paragraph A requires the medically documented persistence, either continuous or intermittent, of one of the following:

(1) a depressive syndrome, (2) a manic syndrome, or (3) a bipolar syndrome. Plaintiff failed to identify any evidence that his impairments allegedly met or equaled Paragraph A of

Listing § 12.04. (Pl.'s Br. at 12-13). Plaintiff failed to meet his burden in proving he met or equaled the Listing.

The ALJ correctly found Plaintiff did not meet or equal Listing § 12.04 because Plaintiff did not meet the criteria of Paragraph B (Tr. 12-13). Paragraph B requires at least two of the following: (1) a marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation for an extended duration. "Marked" is used as a standard for measuring a degree of limitation and means more than moderate but less than extreme. The ALJ found Plaintiff had mild restriction in his activities of daily living; moderate difficulties with social functioning and concentration, persistence and pace; and no episodes of decompensation (Tr. 12-13).

Plaintiff does not dispute the ALJ's findings surrounding his activities of daily living or episodes of decompensation. Plaintiff's Memorandum of Law (Pl.'s Br. at 12-13). Plaintiff's sole contention is that his social functioning and concentration, persistence and pace, would be markedly limited if he did not spend "most of his days in counseling." However, the role of the ALJ was not to speculate what might happen if Plaintiff had followed a different course of treatment, but to assess the evidence as a whole. 20 C.F.R. §§ 404.1513(b), 404.1527, *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The evidence as a whole supports the ALJ's finding that Plaintiff does not have marked limitations in social functioning. Social functioning refers to a claimant's ability to get along with others, such as family members, friends, neighbors, etc. 20

C.F.R., Part 404, App. 1, § 12.00(C)(2). As the ALJ noted, Plaintiff has a solid support system consisting of family and friends (Tr. 421, 454). Plaintiff also reported frequently spending time with friends (Tr. 22, 492, 567, 568).

Moreover, both state agency psychologist, Timothy Foster, Ph.D., and Nancy Dinwoodie, M.D., reviewed the relevant evidence and opined Plaintiff does not have marked difficulties with social interactions or concentration, persistence and pace (Tr. 258-61, 319-22). 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (state agency medical and psychological consultants are highly qualified physicians as well as experts in Social Security disability evaluation and the ALJ is required to consider their opinions).

Substantial evidence also supports the ALJ's finding that Plaintiff has mild difficulties with regard to concentration, persistence or pace (Tr. 13). As the ALJ noted, while on medication, Plaintiff "was able to counter previous feelings of excess energy" (Tr. 13, 350). During group exercises requiring concentration, Plaintiff was able to engage appropriately in the tasks (Tr. 357, 427, 454). Dr. Dinwoodie also reviewed Plaintiff's pertinent records and opined he is capable of sustaining concentration for task completion and completing a full work day and week (Tr. 321).

Accordingly, Plaintiff's contention that he might meet Listing 12.04 if he received a different course of treatment is without merit and the ALJ's determination that Plaintiff does not meet or equal Listing 12.04 is supported by substantial evidence.

## IV. Conclusion and Recommendation

In the instant case, the ALJ properly considered the relevant evidence and properly performed his duty as the trier of fact of weighing and resolving any conflicts in the evidence. Substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled under sections 216(I) and 223(d) of the Social Security Act and not disabled under section 1614(a)(3)(A) of the Social Security Act.

Therefore, it is respectfully recommended that the decision of the Commissioner be ***AFFIRMED***.

In Chambers at Fort Myers, Florida this 10th day of August, 2012.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies to all parties:

Enrique Escarraz, III
John F. Rudy, III

**Notice to Parties**

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen (14) days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.